COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 27, 2021

Bradley R. Aronstam, Esquire
Adam D. Gold, Esquire
Roger S. Stronach, Esquire
Ross Aronstam & Moritz LLP
100 South West Street, Suite 400
Wilmington, DE 19801

Peter B. Ladig, Esquire
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801

Re: *Shareholder Representative Services LLC v. Shire US Holdings, Inc. et al.,* C.A. No. 2017-0863-KSJM

Dear Counsel:

On October 12, 2020, I issued a post-trial decision in the above-referenced matter (the "Post-Trial Opinion") and ordered the parties to meet and confer on a form of Order and Final Judgment.[1] The parties were unable to reach an agreement, and Plaintiff Shareholder Representative Services LLC ("SRS") moved for entry of an Order and Final Judgment. This letter resolves that motion.

In addition to the $45,000,000 milestone payment, SRS seeks interest in the amount of $13,260,534 and attorneys' fees and costs in the amount of $22,272,933.31. Defendant Shire US Holdings, Inc. ("Shire") does not dispute the milestone payment amount, SRS's interest calculation, the $1,094,945.82 in costs for Keker, Van Nest & Peters LLP ("KVP"), or the $1,530,470.49 in Delaware counsel's fees. Shire disputes the $19,647,517 in KVP's fees as unreasonable.

---

[1] C.A. No. 2017-0863-KSJM, Docket ("Dkt.") 196, Post-Trial Mem. Op. ("Post-Trial Op."). This letter adopts the defined terms set forth in the Post-Trial Opinion.

Most of KVP's sizeable fee is the result of a contingent fee agreement.[2]  SRS initially agreed to pay KVP at an hourly rate and paid roughly $227,339 to KVP from February 2016 to October 2017.[3]  By October 2017, however, SRS struggled to fund this litigation, which prompted SRS and KVP to negotiate a contingent fee agreement entitling KVP to one-third of any proceeds recovered by SRS.[4]

The Post-Trial Opinion granted SRS its reasonable attorneys' fees incurred in connection with this litigation pursuant to a contractual fee-shifting provision.[5]  This court applies the eight factors of Rule 1.5(a) of the Delaware Rules of Professional Conduct to evaluate whether the requested fees are reasonable in contractual fee-shifting cases.[6]  Shire primarily focuses its arguments on the third and eighth factors, disputing whether the nature of KVP's engagement is customary and reasonable.[7]

---

[2] *See* Dkt. 199, Decl. of Laurie Carr Mims Pursuant to 10 *Del. C.* § 3927 in Supp. of Pl. Shareholder Representative Services LLC's Mot. For the Entry of an Order and Final J. ("Mims Decl.") ¶ 6.

[3] *Id.*

[4] *See id.* ¶ 16; *id.* Ex. C at 1–2.

[5] Post-Trial Op. at 75–76.

[6] *See, e.g., Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010); *see also* Del. Lawyers' R. Prof'l Conduct 1.5(a) (listing the eight factors as:  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent").

[7] *See* Dkt. 204, Defs.' Opp'n to Mot. for the Entry of an Order and Final J. ¶¶ 10–16.

Shire first contends that KVP's fee is unreasonable because it was the product of a contingent-fee engagement, but there is nothing inherently unreasonable in enforcing a contractual fee-shifting arrangement to cover a contingent fee award. Risk-taking of this nature is a normal part of litigation, which Delaware public policy seeks to reward when it benefits stockholders.[8] A one-third contingent fee arrangement is quite typical and commercially reasonable.[9] In this case, the contingent fee agreement allowed SRS to retain skilled and experienced counsel despite a lack of resources to fund the litigation, an arrangement that ultimately inured to the benefit of the former FerroKin stockholders. Shire could have contracted in the Merger Agreement to avoid this outcome.[10] It did not. Shire provides no basis to avoid it now.

Shire next argues that KVP erroneously included prejudgment interest and "late fees" in the proceeds when calculating its fee, but those arguments too fail.

---

[8] *See In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1073 (Del. Ch. 2015) ("It is the public policy of Delaware to reward risk-taking in the interests of shareholders." (internal quotation marks omitted)); *In re Plains Res. Inc.*, 2005 WL 332811, at *6 (Del. Ch. Feb. 4, 2005) ("[T]he plaintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interest of shareholders."); *see also O'Brien v. IAC/Interactive Corp.*, 2010 WL 3385798, at *6 (Del. Ch. Aug. 27, 2010) ("[C]ontingency agreements by their very nature are premised upon a result obtained: the success of the client.").

[9] *See, e.g., Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1260 & n.114 (Del. 2012) (cataloging examples of awards equal to approximately one-third of the recovery).

[10] *See, e.g., Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013) (enforcing a contractual fee-shifting provision to cover contingent fees, observing that "if the parties do not want to pay an opposing party's contingent fee, they are free to write an agreement under which the prevailing party will be obliged only to pay fees calculated in accordance with the lodestar method").

There is nothing inherently unreasonable in including prejudgment interest when calculating the appropriate amount, particularly when the underlying agreement includes interest in the relevant proceeds.[11] In this case, the underlying agreement entitles KVP to include interest in the proceeds when calculating its fee.[12]

Nor did KVP include late fees in the proceeds. Shire observes that, before switching to a contingent-fee arrangement, KVP offered a ten-percent discount to SRS for payments made within thirty days of an invoice. Shire contends that it should not be held responsible for Plaintiff's failure to avail itself of this discount. Shire's characterization of this issue,

---

[11] *See, e.g., Boyer v. Wilm. Materials., Inc.*, 1999 WL 342326, at *4 (Del. Ch. May 17, 1999) (including prejudgment interest when calculating "one-third of the total derivative recovery" to set attorneys' fees after post-trial victory on breach of fiduciary duty and unfair dealing claims); *see also Smith v. Howery*, 701 P.2d 1381, 1383 (Mont. 1985) ("When an attorney enters into a contingent fee arrangement based on a percentage of the judgment or award recovered by the client and the total amount recovered includes interest, the attorney is entitled not only to a percentage of the actual damages recovered, but also to a percentage of the pre-judgment and post-judgment interest recovered."); *Marshall v. Dept. of Water & Power*, 268 Cal.Rptr. 559, 574–75 (Cal. Ct. App. 1990) (noting that including "prejudgment interest in the calculation" of a contingent fee award is within the trial court's "exercise of its discretion"); *Tom Riley Law Firm, P.C. v. Tang*, 521 N.W.2d 758, 759 (Iowa Ct. App. 1994) (including prejudgment interest in computing a contingent fee where the underlying contract "specifically defined 'gross recovery' as the 'entire amount of money . . . collected for any and all parties'" and thus included recovery of prejudgment interest (ellipses in original)); *Kooperman v. Picoult*, 343 N.Y.S.2d 732, 735 (N.Y. App. Div. 1973) ("In reference to [the clients'] claim that [their attorneys] are not entitled to share in the award of interest when such award is made, we find no merit. The agreement clearly stated 'one-third of any and all moneys . . . .'"); *Nolan v. Wilson*, 2007 WL 1159948, at *3 (N.J. Super. Ct. App. Div., Apr. 20, 2007) (holding that calculation of an attorneys' contingent fees in a contract dispute may include prejudgment interest where the contingent fee agreement called for fees based on "the total amount recovered on the client's behalf").

[12] *See* Mims Decl. Ex. B ¶ 6(a). Shire argues that it should not be responsible for contingent payments owed to KVP based on prejudgment interest because it is not a party to the contingent agreement between KVP and SRS. Shire's argument raises a distinction without a difference— Shire is obligated to indemnify SRS's reasonable fees, and the court finds it reasonable to include prejudgment interest when calculating the contingent fee owed to KVP.

however, confuses discounts with penalties. The ten percent difference in price represented a *discount* for timely payments, not a *penalty* for late payments. In any event, Section 10.3 of the Merger Agreement obligates Shire to pay Plaintiff's reasonable costs incurred. Because KVP's fees are reasonable, and because SRS actually incurred the cost of not receiving the ten-percent discount, Shire must pay these expenses as well.

In sum, none of Shire's primary arguments persuade me that KVP's requested fee is unreasonable. I have also evaluated the other Rule 1.5(a) factors and conclude that they weigh in SRS's favor for the reasons set forth in SRS's motion and reply.

A lodestar analysis provides a helpful cross-check to confirm that this approach will not result in an unethically excessive fee. KVP calculates its lodestar as approximately $7.96 million.[13] The requested fee award results in a multiplier of approximately 2.5x on this amount. That is on par with or less than awards this court has previously deemed reasonable in the post-trial or advanced-stage litigation context.[14]

---

[13] Dkt. 199, Pl. Shareholder Representative Services LLC's Mot. For the Entry of an Order and Final J. ¶ 23.

[14] *See, e.g.*, *Ams. Mining*, 51 A.3d at 1252, 1262–63 (affirming trial court attorney fee award of "66 times the value of [the attorneys'] time and expenses" for post-trial victory); *In re El Paso Corp. S'holder Litig.*, C.A. No. 6949-CS, at 40 (Del. Ch. Dec. 3, 2012) (TRANSCRIPT) (awarding a fee resulting in a multiplier of approximately 4.9x the lodestar pursuant to a settlement reached after substantial motion practice and an unsuccessful preliminary injunction hearing); *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, C.A. No. 2635-CC, at 17 (Del. Ch. June 8, 2007) (TRANSCRIPT) (awarding a fee resulting in a multiplier of approximately 6.5x the lodestar pursuant to a settlement reached after substantial motion practice and a successful preliminary injunction hearing).

Accordingly, SRS is entitled to the full amount of KVP's fees. The parties shall prepare a form of Order and Final Judgment consistent with this decision.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Vice Chancellor

cc:     All counsel of record (by *File & ServeXpress*)